UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DEAN NASCA et al.,

                    Plaintiffs,                                  **REPORT AND**
                                                    **RECOMMENDATION**
           *-against-*                               23-CV-02786 (NGG) (JMW)

BYTEDANCE, LTD. et al.,

                    Defendants.
------------------------------------------------------------X


**A P P E A R A N C E S:**

Harris L. Marks, Esq.
**Belluck & Fox LLP**
564 Fifth Avenue, 5th Floor
New York, NY 10036
*Attorney for Plaintiffs Dean and Michelle Nasca*

Matthew P. Bergman, Esq.
**Social Media Victims Law Center PLLC**
821 2nd Avenue, Suite 2100
Seattle, WA 98104
*Attorney for Plaintiffs Dean and Michelle Nasca*

David Mattern, Esq.
**King & Spalding**
1700 Pennsylvania Ave NW
Washington, DC 20006
*Attorney for Defendants ByteDance, Inc. and TikTok, Inc.*

Kristen Renee Fournier, Esq.
**King & Spalding**
1185 Avenue of the Americas
New York, NY 10036
*Attorney for Defendants ByteDance, Inc. and TikTok, Inc.*

Andrew G. Muccigrosso, Esq.
**LIRR Law Department**
93-02 Sutphin Blvd
Jamaica, NY 11436
*Attorney for Defendants Metropolitan Transportation Authority and Long Island Railroad*

William D. Wexler, Esq.
**William D. Wexler, Esq.**
816 Deer Park Avenue
North Babylon, NY 11703
*Attorney for Defendant Town of Islip*


**WICKS,** Magistrate Judge:

      Plaintiffs Michelle and Dean Nasca commenced this lawsuit against Defendants alleging various claims including product liability and negligence as a result of Defendants' actions which they claim led to the death of their son.  Defendant ByteDance LTD., ByteDance, Inc., TikTok, Inc. timely removed the action contending that this Court has diversity subject matter jurisdiction based upon Plaintiffs' fraudulent misjoinder of Defendants TikTok and the Metropolitan Transportation Authority ("MTA").  (DE 1 at 5.)

      Now before the Court, on referral from the Honorable Nicholas G. Garaufis, is Plaintiffs' motion for remand (DE 15), which is grounded in the contention that Defendant TikTok failed to establish complete diversity, since there was no fraudulent misjoinder.  However, Defendants TikTok, MTA, and the Town of Islip ("Town") strenuously oppose the motion, asserting that fraudulent misjoinder indeed exists and therefore this Court lacks subject matter jurisdiction. For the reasons that follow, the undersigned respectfully recommends Plaintiffs' motion be GRANTED and the case be remanded.

## BACKGROUND

The following facts are taken from Plaintiff's original complaint filed in the Supreme Court of New York, County of Suffolk.  (DE 1-1 at 6-94.)

**The TikTok Algorithm and Business Practices**

Defendant ByteDance Ltd. is a Chinese internet technology company headquartered in Beijing and incorporated in the Cayman Islands.  (DE 1-1 ¶ 14.)  ByteDance Ltd. owns and operates the TikTok video-sharing app, and maintains exclusive ownership and control over ByteDance, Inc. and TikTok, Inc. (collectively the "TikTok Defendants").  (*Id.*)  Defendant ByteDance, Inc. is a Delaware corporation with its principal place of business in Mountainview, California, while Defendant TikTok, Inc. is a California corporation with its principal place of business in Culver City, CA.  (*Id.* ¶¶ 14, 16.)  Known in China as "Doujin," TikTok hosts a wide variety of short-form user videos—upon opening the app, individual TikTok users are presented with an endless stream of algorithmically-curated videos.  (*Id.* ¶¶ 48, 50.)  In 2017, TikTok became available outside of mainland China, and following a merge with another Chinese social media app in 2018, TikTok was made accessible to worldwide users.  (*Id.* ¶ 49.)

Both the Chinese and American iterations of TikTok utilize the For You Page ("FYP") feature, which reviews user information, prior history, and other factors to create an individualized collection of videos for each user.  (*Id.* ¶ 50.)  The FYP is intended to maximize both the amount of time users spend on the app and their level of engagement, which leads to increased advertising revenue.  (*Id.* ¶ 51.)  Though the TikTok app is free to download, it generates "astronomical" profits from advertisers who allegedly pay a premium to have their products presented to TikTok users, and through the sale of user data.  (*Id.* ¶ 58.)  Plaintiffs allege that due to this advertisement-based revenue structure, the TikTok Defendants have developed insidious features—such as randomized, unpredictable rewards and a "pull to refresh"

feature that emulates the thrill of gambling—to hijack and manipulate users' brain chemistry. (*Id.* ¶ 61.)  As such, Plaintiffs contend TikTok is a dangerously addictive app that is particularly harmful to minors due to their underdeveloped frontal lobes, diminished capacity for impulse control, and susceptibility to addiction.  (*Id.* ¶ 105.)

Plaintiffs further allege that the TikTok Defendants specifically market and design TikTok to be as enticing as possible to children and teenagers, as this demographic is the "key to long-term profitability and success."  (*Id.* ¶ 71.)  To support this assertion, Plaintiffs cite documents from a 2021 data leak: social media companies Facebook and Instagram evidently conducted field research into TikTok to determine how it effectively dominated the youth market.  (*Id.* ¶ 72.)  Furthermore, TikTok's marketing campaigns often feature young actors, and TikTok's COO and CEO have made statements characterizing the app as "welcoming" and "sunny."  (*Id.* ¶¶ 114-118.)  Internal TikTok documents allegedly indicate that in the United States alone, approximately eighteen million children below the age of fourteen use TikTok each day.  (*Id.* ¶ 55.)

Plaintiffs also assert that the Defendant TikTok, to further transfix minors, created an algorithm that presents young users with psychologically disturbing videos because such videos produce a greater dopamine response in children as opposed to safe, benign content.  (*Id.* ¶ 6.)  These videos allegedly glorify violence, depression, suicide, and self-harm.  (*Id.* ¶ 131.)  Plaintiffs claim that the TikTok Defendants were aware of the potentially injurious impact of this algorithm—they state that the Chinese version of TikTok limits screentime for minor users and shows them science experiments, museum videos, and educational content.  (*Id.* ¶ 79.)  The American app, conversely, amplifies various "challenges" regardless of their safety—for

example, in December 2021, American children and teenagers were inundated with videos promoting an extreme, restrictive diet. (*Id.* ¶ 102.)

The Complaint also describes the TikTok Defendants' data collection practices as unscrupulous and deceptive. (*Id.* ¶ 52.) While TikTok representatives have assured the public that the company does not share user information with the Chinese government, ByteDance Ltd. is partially owned by the Chinese Government, and leaked audio from internal meetings indicates that ByteDance employees had access to personal data. (*Id.* ¶ 116.) Furthermore, TikTok's purported minimum age requirement is largely unenforced, and the app contains no warnings—to parents or to general users—that mention the potentially adverse effects of using the app, or the possibility that Chinese government officials may view user data. (*Id.* ¶ 54.) Plaintiffs assert that this absence of adequate warnings, the inherent insidiousness of the app, and the collective negligence of the Defendants resulted in Chase Nasca's premature death. (*Id.* ¶ 155.)

**The Incident and the MTA and Town of Islip Defendants**

The decedent plaintiff Chase Nasca lived with his parents, Plaintiffs Dean and Michelle Nasca, in Suffolk County, New York at the time of his death. (*Id.* ¶ 11.) Plaintiffs describe Chase as a smart, athletic, social child who never demonstrated outward symptoms of depression. (*Id.* ¶ 125-126.) Plaintiffs first became aware of Chase's TikTok use in 2019 or 2020, and though they did not consent to Chase's download of the application, they allegedly believed that it contained only "silly dance videos." (*Id.* ¶ 128.) Unbeknownst to the Plaintiffs, Chase's FYP began matching him with depressive, and dangerous content in October 2021. (*Id.* ¶ 129.) While Chase searched for uplifting content such as motivational speeches and clips from television shows, the algorithm showed him bleak, suicide-themed content—at times, the videos

included depressing background music that had been suggested by TikTok itself. (*Id.*) His mental health began to deteriorate, and Plaintiffs allege that the provocative content drew Chase into the app as it pushed him closer to suicide; some of the videos even suggested that young people should kill themselves by stepping in front of a moving train. (*Id.* ¶ 9.) Even after Chase's death, TikTok would continue to curate a steady stream of violent videos to display on his FYP. (*Id.* ¶ 133.)

On February 18, 2022, Chase stopped at the train tracks (which were owned, inspected, and maintained by the MTA Defendants and the Town of Islip) in Bayport, New York after a trip to the gym. (*Id.* ¶ 138.) Although numerous individuals had been killed by trains at that very location, Plaintiffs allege that the MTA Defendants and the Town of Islip affirmatively declined to construct a fence; therefore, Chase was able to enter the tracks at 6:35 pm. (*Id.* ¶ 138.) Chase sent a single message to a friend before he was struck and killed by a train owned by the MTA Defendants. (*Id.* ¶ 139-140.)

## **PROCEDURAL HISTORY**

On May 11, 2022, Plaintiffs first filed a *pro se* Notice of Claim against the MTA and the Town of Islip,[1] followed by the filing of the action. (*Id.* ¶¶ 26-32; DE 15 at 1-2.)

Plaintiffs retained counsel and filed their case against Defendant TikTok and its parent company, ByteDance, in the Northern District of California, joining approximately 200 other cases against social media companies. *Nasca, et al., v. ByteDance Inc., et al.,* No. 22-cv-06134 (YGR), (N.D. Cal. Oct. 18, 2022). There, they brought a strict products liability, negligence, unjust enrichment, and invasion of privacy claim against TikTok. (DE 1 ¶ 2.) However, once

---

[1] Before pursuing legal action against a municipality, plaintiff must first file a notice of claim within 90 days from the date of the incident. *See* N.Y. GEN. MUN. § 50-e; New York City Comptroller, *File a Claim*, https://comptroller.nyc.gov/services/for-the-public/claims/file-a-claim/ (last visited July 10, 2023).

counsel learned of the *pro se* claim and performed follow-up research on actionable claims against the MTA, he counseled his clients to voluntarily dismiss their claims and brought suit in the Suffolk County Supreme Court, this time adding the MTA Defendants.  (*Id.* ¶ 4.)  Plaintiffs allege that dismissing their California claims was also imperative because the statute of limitations for Plaintiffs to file a claim against MTA would expire soon and the only way to sue both the MTA and TikTok would be to sue in state court since diversity was not met between the MTA and Plaintiffs alone.  (DE 15 at 2.)  Of relevance here, Plaintiffs sued Defendant TikTok under the same causes of action as in the California suit (DE 1-1 at 62-74) and sued the MTA and Town of Islip for its negligence.  (*Id.* at 75.)  Common claims amongst all Defendants are wrongful death and loss of services.  (DE 21 at 3.)

Defendant TikTok removed the case to this Court on April 13, 2023.  (DE 1.)  In its removal petition, it noted that this action is part of a series of lawsuits against content-sharing companies like TikTok, Instagram LLC, and YouTube LLC which have been consolidated into a multidistrict litigation ("MDL").  (*Id.* ¶ 1.)  TikTok states that the claim against the MTA is "completely unrelated" to the TikTok claims (*Id.* ¶ 5) and the MTA Defendants have been fraudulently misjoined so the Court should disregard the lack of diversity between Plaintiffs and MTA.  (*Id.* at 7.)

Shortly after removal, the undersigned questioned the jurisdictional predicate and directed Defendants to show cause as to why this Court has jurisdiction since complete diversity was admittedly absent.  (Electronic Order dated Apr. 18, 2023.)

In the interim, the Defendant TikTok and Plaintiffs filed a consent motion to stay all proceedings pending the resolution of the subject matter jurisdiction issue.  (DE 6.)  Judge

Garaufis granted the parties' motion.  (DE 7.)  MTA filed a similar motion, also granted by Judge Garaufis.  (DE 13-14.)

Letter briefs on the jurisdictional issues were filed (DE 11-12), and Plaintiffs soon filed a formal motion on May 11, 2023 requesting that the Court remand the matter to state court.  (DE 15.)  This motion was referred by Judge Garaufis to the undersigned for a Report and Recommendation.  (DE 19-22.) The Court held oral argument on Plaintiffs' motion to remand on July 6, 2023.[2]  (DE 24.)

In their motion, Plaintiffs argue that the Court should decline to adopt fraudulent misjoinder, as advanced by Defendants, claiming it would be an improper expansion of federal jurisdiction.  (DE 15.)

Defendant TikTok opposes, stating that the Court should defer considering this fraudulent misjoinder issue because the MDL dealing with similar issues will address whether the case should be remanded.  (DE 21.)  Further, it disagrees with Plaintiffs in that fraudulent misjoinder has been applied in other federal courts.  (*Id*.)  And finally, the defendants were "misjoined" because they bear no connection to each other.  (*Id*.)  It requests that the Court await for the MDL to address the jurisdiction question, but if not, deny the motion to remand and sever the claims against the MTA Defendants versus those against TikTok.  (*Id*.)

On June 1, 2023, the Town of Islip filed a letter with the Court requesting that the Court deny Plaintiffs' motion to remand because Plaintiffs have fraudulently misjoined the Town of Islip along with the TikTok Defendants.  (DE 20 at 1.)  It further asserts that there is nothing in common between the allegations against the TikTok Defendants and the Town of Islip, namely because the Complaint consists of "mental health harms caused by the use of online services."

---

[2] *See generally* Recording of Oral Argument at 10:59-11:44, *Nasca et al v. ByteDance, LTD. et al*, No. 23-cv-2786 (NGG) (JMW) (E.D.N.Y. July 6, 2023) (on file with the Court) ("Oral Argument).

(*Id.*)  This significantly contrasts with the claims lodged against the MTA and Town of Islip which consists of negligence in the failure to fence off the train track.  (*Id.*)  The Town further asserts that the type of evidence produced by either Defendant will be drastically different— TikTok will produce evidence related to mental health effects and raise defenses under federal law such as the First Amendment, as well as other documents relative to a product liability case, whereas the Town will focus on evidence pertaining to negligence.  (*Id.*)  Ultimately, the Town requests that the Court disregard the Town's and MTA's "citizenship" for diversity purposes, remand Plaintiffs' claims against the Town and MTA, and maintain jurisdiction over the remaining claims against TikTok.  (*Id.* at 2.)

The MTA has argued similarly, that is, that there are different and distinct transactions here that led to the resulting death.  (DE 22 at 2.)

**The Related MDL**

TikTok removed this case based on fraudulent misjoinder and then filed it with other actions before the Multidistrict Litigation ("MDL").  (DE 15 at 3.)  A conditional transfer order was issued, meaning that this case could potentially be transferred to the Northern District of California along with all the other related cases filed by TikTok.  Plaintiffs filed a Notice of Opposition to the transfer order and filed a motion to vacate the order subsequently thereafter. (DE 21 at 4.)  In light of the MDL, Plaintiffs urge this Court to adopt the methodology used in within this District's cases—that is, decide the remand issue before allowing it to be transferred to the MDL.  (DE 15 at 3-4.)

TikTok, on the other hand, says the Court should wait until the transfer is decided because the MDL court will assess the jurisdictional question.  (DE 21 at 1.)  It concludes that deferring to the MDL court is the most efficient thing to do at this juncture, specifically because

it would conserve judicial resources in deciding the issue now; address jurisdictional questions consistently; and prevent the Court from evading jurisdictional requirements. (*Id*. at 5-6)

**Fraudulent Misjoinder**

Plaintiffs posit that only the Eleventh Circuit, and not the Second Circuit, has adopted the doctrine of fraudulent misjoinder. (DE 15 at 5.)  And, the Fifth Circuit has *explicitly* rejected this doctrine, while all other Circuits have yet to adopt it. (*Id.* at 5).

Plaintiffs argue that in addressing TikTok's claim, the court will be interpreting state procedural law—an area left for state courts—which further supports the notion that it should decline to adopt the fraudulent misjoinder doctrine. (*Id.* at 7.)  And, if the Suffolk County Supreme Court wishes to sever the Defendants, then TikTok's relief at that time would be to remove the severed case to federal court once again. (*Id*.)

Defendants on the other hand ask that this Court apply the doctrine although the Second Circuit has not yet adopted it. (DE 21 at 10.)  It further points to cases within other Circuits, which have seemingly approved application of the doctrine despite not adopting it in some cases. (*Id*.)

Plaintiffs maintain that TikTok's barrage of suicide videos, coupled with MTA's failure to fence off the track in an area known to have had suicides occur in the past, provides the Court with enough evidence to satisfy the "same transaction or occurrence" prong of the permissive joinder rule. (DE 15 at 9-10).

Defendant argues that the TikTok claims or the MTA claims arising out of the same transaction or occurrence would "involve markedly different facts[,] evidence" and legal theories. (DE 21 at 15.)  And Plaintiffs have not demonstrated a "logical relationship" between

the two Defendants, nor have they alleged that the Defendants acted in concert or conspired to kill Chase Nasca.  (*Id*. at 16.)

Plaintiffs respond that the two Defendants' (TikTok and the MTA) conduct is "incapable" of being divided.  (DE 15 at 10.)  Tiktok's algorithms collected ample location data—thus, Plaintiff claims that Defendants are "inextricably relate[d]" to one another, as the algorithm tracked Chase's location and lured him to the unfenced train tracks.  (*Id.* at 1-2.)

Defendants argue that in this case, each defendant will raise different defenses.  (DE 21 at 19.)  For instance, Plaintiffs' claims zero in on whether TikTok's algorithms were addictive and whether TikTok failed to provide adequate warnings to its users, which will necessarily implicate various federal laws.  (*Id*. at 19-20.)  However, the claims against the MTA will focus on negligence and defenses privy to municipalities.  (*Id*.)

In its reply, Plaintiffs, for the first time raise the defense that the claims will share common questions of fact, namely "the cause and extent of Plaintiffs' damages" including each defendant's culpability.  (DE 19 at 7.)

Defendants argue that "egregiousness" is not necessary to find misjoinder but the simple fact that Plaintiffs have re-filed their case in different court with different defendants is "clear evidence" of "forum shopping and joinder gamesmanship."  (DE 21 at 22.)  It further maintains that neither bad faith nor egregiousness are needed to establish *fraudulent* misjoinder; a court can find Plaintiffs fraudulently misjoined the MTA solely on the basis that it filed suit against TikTok and then dismissed its claims only to add the MTA.  (*Id*.)

In its reply, Plaintiffs state there was no bad faith in the alleged claims because they only sought to dismiss their federal claims before the statute of limitations expired and dismissed its

claims in the MDL and re-filed in state court, as it was the only way it could preserve its claims against the MTA defendants.  (DE 19 at 1.)

## DISCUSSION

It is axiomatic that federal courts are of limited jurisdiction and "possess[] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Federal courts generally entertain cases falling into two categories, namely, cases involving a federal question, 28 U.S.C. § 1131, and cases where parties are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1132.  Further, "it is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted).  Where, as here, an action is removed to federal court based on diversity of citizenship jurisdiction, "complete diversity" must exist, meaning that "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)).  Where an action is removed and the removal is challenged, the burden rests with the removing party (defendant) to establish that federal subject matter jurisdiction exists, keeping in mind that the "federal courts construe the removal statute narrowly, resolving any doubts against removability." *Ferreira v. N.Y. Daily News*, No. 08-CV-1520 (RRM)(MDG), 2009 WL 890577, at *2 (E.D.N.Y. Mar. 31, 2009) (quoting *Thomas v. Baldwin*, 189 F. Supp. 2d 1, 2 (E.D.N.Y. 2002)); *see Percy v. Oriska Gen. Contracting*, 20-cv-6131 (NGG), 2021 WL 2184895, at *5 (E.D.N.Y. May 27, 2021) ("On a motion to remand to state court, 'the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof.'") (citation omitted).  Thus, the burden here lies with Defendant TikTok, and the present motion is viewed through that lens.

12

Defendant TikTok and Plaintiffs standing alone, are diverse.  The amount in controversy exceeds $75,000—thus, there is no doubt that diversity jurisdiction under 28 U.S.C. § 1441(b) exists between those parties.  (DE 21 at 7.)  However, the heart of this dispute is whether Defendant TikTok properly removed this action since the joining of MTA and Town Defendants admittedly defeats diversity.  Defendant TikTok asserts that removal based on fraudulent misjoinder is appropriate because Plaintiffs have improperly joined a non-diverse party, here the MTA, which defeats diversity and confines the case to state court.  (DE 1 at 8.)  Further, it states that the set of claims against TikTok and the MTA are completely different from one another. (*Id*. at 11.)  Thus, TikTok demands that the Defendants be severed to preserve jurisdiction between the two sides.

## A.  Should the Court Await Decision by the MDL?

Before addressing whether fraudulent misjoinder exists, the Court must first consider the threshold issue of whether it should even assess the motion to remand at all.  Specifically, the parties here debate whether the Court should defer to the MDL's ruling on the pending conditional transfer order[3] or decide the motion to remand immediately.

According to Judicial Panel on Multidistrict Litigation Rule 2.1(d), pending conditional transfer orders before the Panel "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." Panel Rule 2.1(d); *see also In re Consolidated Fen-Phen Cases*, No. 03-CV-3081 (JG), 2003 WL 22682440, at *2 (E.D.N.Y. Nov. 12, 2003) (citing this MDL rule).

---

[3] A conditional transfer order may take the form of a tag-along motion.  Specifically, this order arises when a party in a case within an MDL seeks to bring in another action because it shares common factual questions in the existing MDL.  *See* Jim Wagstaffe and The Wagstaffe Group, *Motion for Multidistrict Litigation (MDL) Transfer: Opposing MDL Transfer Checklist (Federal)*.  Here, the *Nasca* case has been conditionally transferred to MDL 3047 and Plaintiffs have filed a Notice of Opposition to the transfer order as well as a motion to vacate the transfer order.  (DE 21 at 4.)

In *Fen-Phen*, the Court decided whether to remand immediately instead of deferring because the removal issue at hand was not one previously decided by the MDL court.  *Fen-Phen*, 2003 WL 22682440, at 2.  TikTok states that *Youngers et al. v. Meta Platforms, Inc. et al.* decided this very issue of whether to remand based on fraudulent misjoinder.  *See Youngers et al. v. Meta Platforms, Inc. et al.*, No. 22-cv-00608, 2023 U.S. Dist. LEXIS 18852 (D.N.M. Feb. 1, 2023).  But as Plaintiffs point out, the *Youngers* court had not decided the issue of remand and whether fraudulent misjoinder actually existed because the case was transferred *before* any decision on the remand motion was made.  (DE 19 at 2.)  Further, Plaintiffs noted at Oral Argument that out of the 200 cases in the MDL, this is the only case involving non-social media defendants alleged to be an instrument of a suicide.  Oral Argument at 11:14 (discussing other cases in the MDL involving other tragedies, but not suicide).

When arguing that the Court should defer consideration of the jurisdictional question, the Defendant relies upon a case the Court finds inapposite.  In *Aguilar v. Merck & Co.*, No. 05-CV-4865 (SJ), 2005 U.S. Dist. LEXIS 59164, at *1 (E.D.N.Y. Nov. 22, 2005), the Court chose to defer to the Panel's ruling on the issue of transfer.  *Aguilar*, however, had different facts than those alleged here: it was against a manufacturer and various medical providers, and other transferee courts had already decided to defer on the issue.  *Id.* at *5 (noting that plaintiffs' motions to remand had *already* been deferred until after transfer to the MDL litigation since the issues in the motion were not "unique").  Thus, it was important to defer there, where several other similar cases had already gone through this motion to remand process and deferring would avoid "inconsistent rulings" and "conserve[e]…judicial resources."  *Id.* at *6-7.  The case before the Court, however, involves different factual circumstances—alleged fraudulent misjoinder not

for a pharmaceutical case, but against a social media company and a railroad company resulting in the same injury.

Further, it is prudent for the Court to decide the issue now instead of deferring to the Judicial Panel on Multidistrict Litigation's decision because the joining of the MTA and Town Defendants wholly divests the Court of its diversity jurisdiction—that is, because the MTA and Town Defendants are rooted in New York and because Plaintiffs are from New York, diversity jurisdiction does not exist between the parties as they stand.  *See Abruzzo Docg Inc. v. Acceptance Indemn. Ins. Co.,* No. 20-CV-4160 (MKB), 2021 U.S. Dist. LEXIS 220196, at *18 (E.D.N.Y. Nov. 15, 2021) (noting that federal courts cannot act if complete diversity is not apparent on the face of a complaint for removal); *Labrecque v. Johnson & Johnson,* No. 15-CV-1141 (RNC), 2015 U.S. Dist. LEXIS 134550, at *4 (D. Conn. Oct. 2, 2015) ("If this Court does not have jurisdiction, then the MDL court will not have jurisdiction either.")

And finally, the undersigned finds that the principles of judicial economy and efficiency would be best served by deciding the motion now as opposed to waiting on the MDL to decide the issue. (DE 19 at 3-4); *see Edmondson v. Pfizer, Inc.*, No. 16-CV-1944 (CEJ), 2017 U.S. Dist. LEXIS 16891, at *4 (E.D. Mo. Feb. 7, 2017) (finding a deferral on the MDL decision inappropriate because the district court was better suited to determine jurisdiction and waiting to rule on the remand motion "would not promote the efficient administration of justice"); *Fayetteville Ark. Hosp. Co. v. Anneal Pharms., LLC*, No. 5:20-CV-5036, 2020 U.S. Dist. LEXIS 86467, at *11 (W.D.Ark. May 18, 2020) (deciding the motion to remand because the court should "put[] a case…in a court that has the jurisdiction to resolve it" and it is inefficient to wait for the Judicial Panel for Multidistrict Litigation to resolve the case when it may not have jurisdiction).

It is for these reasons that the undersigned recommends deciding the motion to remand now as opposed to awaiting decision by the MDL.

### B. Fraudulent Misjoinder[4]

Because the undersigned respectfully recommends that the Court decide the motion on remand immediately rather than await MDL decision, the question turns on whether fraudulent misjoinder is present as Defendants allege. If the Court decides to apply the doctrine, and the case fits within the confines of the doctrine, then the case should remain here.

Fraudulent misjoinder is drawn from the Eleventh Circuit case *Tapscott v. MS Dealer Service Corp.* 77 F.3d 1353 (11th Cir. 2000). It is often used "to defeat removal by joining together claims against two or more defendants where the presence of one would defeat removal and where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." *A. Kraus & Son v. Benjamin Moore & Co.*, No. 05-CV-5487 (ARR) (VVP), 2006 U.S. Dist. LEXIS 37284, at *16 (E.D.N.Y. June 7, 2006); *In re Fosamax Prod. Liab. Litig.*, 2008 U.S. Dist. LEXIS 57473, at *43 (S.D.N.Y. July 28, 2008) (noting that fraudulent misjoinder "occurs when a plaintiff attempts to defeat removal by mis-joining the unrelated claims of non-diverse parties").

---

[4] Defendants only oppose Plaintiff's joining of the MTA Defendant and the Town based on fraudulent *misjoinder*, not fraudulent *joinder*, the latter of which requires a higher degree proof. *See Abruzzo Docg Inc. v. Acceptance Indem. Ins. Co.*, 20-CV-4160 (MKB), 2021 U.S. Dist. LEXIS 220196, at *8 (E.D.N.Y. Nov. 15, 2021) (noting that to establish fraudulent joinder, "the party asserting jurisdiction must demonstrate, by clear and convincing evidence, either (1) 'outright fraud' in the plaintiff's pleadings[;] or (2) that there is 'no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court'") (quoting *Pampillonia v. RJR Nabisco, Inc*., 138 F.3d 459, 461 (2d Cir. 1998)); *Gerbo v. Kmart Corp*., No. 14-CV-4866, 2015 WL 6691603, at *2 (E.D.N.Y. Nov. 3, 2015) ("A defendant must establish by clear and convincing evidence that a plaintiff's pleadings contain some false set of facts in order to prove fraud in the pleadings.") (citation omitted).

Not every instance of misjoinder is fraudulent and courts should only retain jurisdiction if the misjoinder is found to be "egregious." *A. Kraus & Son*, 2006 U.S. Dist. LEXIS 37284, at *16 (quoting *Tapscott,* 77 F.3d at 1360). Upon a finding of fraudulent misjoinder, the court can sever the non-diverse parties and retain jurisdiction over the diverse parties. *Abruzzo Docg Inc*., 2021 U.S. Dist. LEXIS 220196, at *19.

For fraudulent misjoinder application, courts apply the relevant state law rule for permissive joinder as opposed to the federal rule. *Id.* at *21; *In re Fosamax Prod. Liab. Litig.,* 2008 U.S. Dist. LEXIS 57473, at *45-46 ("[B]ecause this inquiry looks to whether the non-diverse party was misjoined in *state* court before removal, the majority of cases have held that state rather than federal joinder rules apply.") (emphasis added). Applying state joinder rules also better serves interests of comity and federalism because state procedural rules apply when evaluating such claims. *See In re Propecia (Finasteride) Prod. Liab. Litig*., No. 12-CV-2049 (JG) (VVP), 2013 U.S. Dist. LEXIS 117375 at *61 (E.D.N.Y. May 17, 2013). Under New York's law of permissive joinder,

> Persons against whom there is asserted any right to relief jointly, severally, or in the alternative, arising out of the same transaction, occurrence, or series of transactions or occurrences, may be joined in one action as defendants if *any* common question of law or fact would arise.

N.Y. CPLR § 1002(b) (emphasis added).

Thus far, the Eleventh Circuit appears to be the lone Circuit[5] to have adopted the fraudulent misjoinder doctrine. *See Tapscott v. MS Dealer Service Corp*., 77 F.3d 1353 (11th

---

[5] Courts in other Circuits have either expressly not adopted or simply not applied the doctrine. *See Proulx v. Mintzer,* No. 19-12506 (FDS)*,* 2020 U.S. Dist. LEXIS 103241, at *20 (D. Mass. June 11, 2020) (finding that the First Circuit has not recognized the doctrine); *Brookside Banquets, LLC v. Selective Ins. Co.,* No. 21-08832 (KM) (CLW), 2021 U.S. Dist. LEXIS 247634, at *8 (D.N.J. Dec. 29, 2021) (noting that the Third Circuit has neither adopted nor dismissed the doctrine and finding the doctrine inapplicable there); *Asbury v. Pocahontas Coal Co. LLC,* No. 2:23-cv-00005, 2023 U.S. Dist. LEXIS 42652, at *10 (S.D. W. Va. Mar. 14, 2023) (noting that the Fourth Circuit has yet to adopt the doctrine); *Ticer v.*

Cir. 1996).  *Tapscott* involved an "automobile" class alleging various claims concerning the sale

of service contracts on cars sold and financed in Alabama and another "merchant" class alleging

violations from the sale of contacts in connection with the sale of retail products.  *Id*. at 1355.

There, the defendants removed the class action and the district court denied plaintiffs' motion to

remand and granted defendants' motion to sever.  *Id*. at 1355.  Plaintiffs appealed.  *Id*. at 1355-

56.  The appellate court reviewed the joinder of the defendants and noted that the district court

found an improper and fraudulent joinder because there was no allegation of joint liability

between the defendants.  *Id*. at 1360.  The appellate court ultimately disagreed with appellants

who argued that "a misjoinder, no matter how egregious, is not fraudulent joinder."  *Id*.  It stated

that misjoinder can be "just as fraudulent as the joinder of a resident defendant against whom a

plaintiff has no possibility of a cause of action."  *Id*. The court then reviewed joinder under Fed.

R. Civ. P. 20 and noted there was no allegation of joint liability, and the automobile class was

distinct from the merchant class, as there was only one common claim between both of them,

which is insufficient for joinder.  *Id*.  And, the resident defendants in the automobile class had no

real connection to the defendants in the merchant class.  *Id*.  It did not hold that fraudulent

misjoinder was present but rather that the attempt to join the parties was "so egregious as to

constitute fraudulent joinder."  *Id*.

---

*Imperium Ins. Co.*, 20 F.4th 1040, 1045 n.11 (5th Cir. 2021) (declining to adopt the doctrine); *Kent State University Bd. of Trustees v. Lexington Ins. Co.*, 512 Fed. Appx. 485, 491 n.1 (6th Cir. 2013) (declining to adopt the doctrine); *Evers Pharm. Inc. v. OptumRX, Inc.*, No. 22-cv-2156 (DWD), 2023 U.S. Dist. LEXIS 7977, at *15-16 (7th Cir. 2023) (finding courts in the Seventh Circuit have "repeatedly rejected" the doctrine); *Graham v. Mentor WorldWide LLC*, 998 F.3d 800, 804 (8th Cir. 2021) (noting that the court has not adopted the doctrine and declining to apply it because it was not properly before the court); *Sztroin v. Dituri*, NO. C22-5608 (BHS), 2022 U.S. Dist. LEXIS 186684, at *6 (W.D. Wash. Oct. 12, 2022) (9th Cir. 2022) (noting that the Ninth Circuit has not adopted the doctrine); *Parson v. Johnson & Johnson*, 749 F.3d 879, 893 (10th Cir. 2014) (noting that the Tenth Circuit has yet to adopt the doctrine).

Defendants assert that courts within the Second Circuit have adopted the fraudulent misjoinder doctrine, and that as such, the Court must apply it in this case.  Though several courts within this Circuit have applied the doctrine, in fact they have generally *declined* to adopt it. *Kraus & Son v. Benjamin Moore & Co*., 2006 U.S. Dist. LEXIS 37284, at *15, 18 (finding fraudulent misjoinder to be "unclear" and declining to adopt the doctrine, as it had not yet been adopted by the Circuit); *Abruzzo Docg Inc*. *v. Acceptance Indem. Ins. Co.*, No. 20-CV-4160 (MKB), 2021 U.S. Dist. LEXIS 220196 (E.D.N.Y. Nov. 15, 2021) (holding that all claims raised common questions of law and fact relating to the COVID shutdowns); *Kips Bay Endoscopy Center, PLLC v*. *Travelers Indem. Co.*, No. 14 Civ. 7153 (ER), 2015 WL 4508739 (E.D.N.Y July 24, 2015) (holding that joinder was proper because the claims raised several common questions of law and fact); *Sons of the Revolution in N.Y., Inc. v. Travelers Indemn. Co. of Am*., No. 14-cv-03303 (LGS), 2014 U.S. Dist. LEXIS 171654, at *4 (S.D.N.Y. Dec. 11, 2014) (holding that although there were no common questions of law, there were common questions of fact; thus, application of the fraudulent misjoinder doctrine was not warranted); *Massey v. Cecil*, No. 19-cv-00049 (BKS) (CFH), 2019 U.S. Dist. LEXIS 68480 (N.D.N.Y. Apr. 23, 2019) (finding that the removing defendants failed to demonstrate improper joinder of the provider defendants for claims which arose out of the same occurrence); *Humphrey v. Riley*, No. 14-cv-80, 2014 WL 3400964 (N.D.N.Y. July 10, 2014) (assuming that the fraudulent misjoinder doctrine applied yet finding the parties properly joined due to shared questions regarding causation and the apportionment of liability); *but see Mancinone v. Allstate Ins. Co*., No. 20-cv-82, 2020 WL 5709675 (D. Conn. Sept. 24, 2020) (applying and adopting the doctrine because the claims bore no relation).

Other courts in this Circuit have acknowledged the existence of the fraudulent misjoinder doctrine but found that it was either too unclear to accurately apply, or simply inapplicable to the facts presented in the given case. *See V.V. v. Meta Platforms, Inc*., No. 23-CV-284 (SVN), 2023 WL 3613232, at *8-10 (D. Conn. May 24, 2023) (noting that fraudulent misjoinder provides little guidance as to (1) the egregiousness standard, (2) the role of Fed. R. Civ. P. 20,[6] and (3) whether courts should apply state permissive joinder rules; citing concern regarding the expansion of federal jurisdiction, the court did not apply the doctrine in this case involving a minor child injured by social media platforms); *In re Rezulin Products Liability Litigation*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001) (declining to apply the egregiousness standard and applying federal rules instead); *Labrecque v. Johnson & Johnson*, No. 15-CV-1141 (RNC), 2015 U.S. Dist. LEXIS 134550, at *9 (declining to apply the fraudulent misjoinder doctrine because it would have created an alternative source of subject matter jurisdiction); *Sea Green Holdings, LLC v. Angera*, 2018 U.S. Dist. LEXIS 61275 (D. Conn. April 11, 2018) (holding that complete diversity would still not exist even if defendant was fraudulently misjoined, and thus declining to address the issue); *cf. In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 (JG) (VVP), 2013 U.S. Dist. LEXIS 117375 at *41-42, 71 (E.D.N.Y. May 17, 2013) (severing and remanding claims of non-diverse plaintiffs and retaining jurisdiction over other claims in widespread defective drug case, while noting that in this instance, fraudulent misjoinder did not improperly extend federal jurisdiction).

Plaintiffs here urge the Court to adopt the approach applied in *Williams*—the Fifth Circuit decision that explicitly rejects the fraudulent misjoinder doctrine. In *Williams*, a class of

---

[6] The federal permissive joinder rule allows defendants to be joined if the claim "aris[es] out of the same transaction…" and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

medical providers sued provider organizations on various state law causes of action in state court. *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 809 (5th Cir. 2021). Plaintiffs then asserted claims against an out of state defendant who removed the case to federal court. *Id*. The Class opposed the removal, stating that a non-diverse defendant still existed in the case. *Id*. The Court ultimately "refused" to adopt the doctrine and found that application of fraudulent misjoinder would improperly expand federal jurisdiction, which ran contrary to 28 U.S.C. § 1441(b)(2)'s case law and the statute text itself. *Id*. at 815. It further found that state courts are better suited to analyze misjoinder questions and defendants can be severed in that court if necessary. *Id*.

Accordingly, based upon the foregoing, the undersigned respectfully recommends that the Court decline to adopt and apply the doctrine of fraudulent misjoinder here. The claims against both the MTA and TikTok Defendants asserted here are inextricably linked to Chase Nasca's death, and that common questions of law and fact exist as to all Defendants in this case.

Defendant next argues that because there is neither a common question nor did the result arise from the same transaction, the Court should sever the MTA Defendants from this case. (DE 21 at 14.) To determine whether there is a sufficient factual nexus between the claims in accordance with New York's permissive joinder rule, the undersigned examines below (1) whether the Defendants should be joined based upon a common transaction or occurrence; and (2) whether there are any common questions of law or fact between the joined Defendants. *See Abruzzo Docg Inc*., 2021 U.S. Dist. LEXIS 220196 at *19 (noting that fraudulent misjoinder requires an analysis of a factual nexus among all claims to satisfy the permissive joinder standard).

Courts have found proper joinder where plaintiffs allege different claims against different defendants arising out of the same result or injury. *Massey v. Cecil,* No. 19-cv-00049 (BKS) (CFH), 2019 U.S. Dist. LEXIS 68480, at *13 (N.D.N.Y. Apr. 23, 2019) (finding that the removing defendants failed to demonstrate improper joinder of the provider defendants for negligence and medical malpractice claims which arose out of the same transaction or occurrence, namely the installation of parts during surgery). But even when defendants make different statements or representations to various plaintiffs, courts have found a connection sufficient to apply the joinder doctrine. *Green,* 2009 U.S. Dist. LEXIS 98285, at *19-20 (noting that defendants' statements and representations made to different plaintiffs were "substantively similar" leading to plaintiffs' connected claims concerning this fraudulent scheme); *cf. D'Angelis v. Bank of Am., N.A.,* 2014 U.S. Dist. LEXIS 6087, at *8-9 (E.D.N.Y. Jan. 16, 2014) (finding separate loan transactions with different lenders and loans for separate properties constituting different transactions or occurrences); *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-CV-2049 (JG) (VVP), 2013 U.S. Dist. LEXIS 117375 (E.D.N.Y. May 17, 2013) (finding no basis for joining various plaintiffs from various jurisdictions who bought different products at different times).

Here, although the Plaintiffs have asserted distinct, independent claims against TikTok and MTA, they clearly arise out of the same resulting unfortunate incident, namely, Chase Nasca's death. *See Massey v. Cecil*, 2019 U.S. Dist. LEXIS 68480, at *13. Contrary to Defendants' assertion that there is no logical relationship between Defendants[7] (DE 21 at 16),

---

[7] The cases cited by TikTok are inapposite here because they involve separate events at different points in time. *Burleson v. Callanan Indus. Inc.*, 543 N.Y.S.2d 225 (3rd Dep't 1989) (involving separate and unrelated accidents occurring months apart); *Gunning v. Buffalo Transit Co.,* 249 N.Y.S.2d 999 (4th Dep't 1964) (severing lawsuits involving multiple yet unrelated accidents). It further points to nonbinding, out of Circuit cases to hone in on this point. (DE 21 at 16-17.) However, these cases are

the record supports that their acts are connected because the actions of both TikTok and MTA, as a matter of pleading, arguably contributed to Nasca's death.  Had the TikTok algorithm not shown Chase those videos and had the MTA not left the fence open, especially when MTA was on notice of individuals getting struck by trains in unfenced areas, creating the opportunity for an individual to commit suicide, Chase would not have been able to follow through with the act.

Further, Plaintiffs have asserted a claim for joint and several liability against both Defendants.  (DE 1-1 at 86.)  At oral argument, Plaintiffs' counsel made the connection between the two, explaining that TikTok displayed suicidal videos to a minor child while at the same time MTA failed to fence off the tracks leading to his death, thus both being instrumental in bringing about Chase Nasca's death.  Oral Argument at 11:42; *see also Burd v. Bleischer*, 203 N.Y.S. 754, 756 (App. Div. 4th Dep't 1924) ("Where two parties by their separate and independent acts of negligence furnish direct causes of a single injury to another person, and it is not possible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury.").

Defendants incorrectly claim that Plaintiffs are required to demonstrate that the MTA and TikTok acted in concert to bring about Chase Nasca's death.  Courts have found that if injuries are indivisible, plaintiffs need not show that defendants acted concurrently or in concert. *See Ravo v. Rogatnick*, 514 N.E.2d 1104, 1107 (N.Y. 1987) ("It is sometimes the case that tort-feasors who neither act in concert nor concurrently may nevertheless be considered jointly and severally liable.")  Here, there appears to be no reasonable or practical way to divide or allocate fault to one defendant over another.  *Id.*

---

unavailing because as noted above, there are cases in the Circuit addressing situations where the Court has found proper joinder involving separate defendants resulting from the same injury.

For these reasons, the undersigned finds the claims arose from a common transaction or occurrence.  The undersigned next considers whether common issues of law and fact exist.

Courts have stated that the common questions of law and fact between the proposed joined parties should be "material to the issue of defendants' alleged liability."  *Green*, 2009 U.S. Dist. LEXIS 98285, at *18.  Plaintiffs here ask the Court not sever the claims against each of the Defendants because doing so could lead to inconsistent rulings, where a federal court finds TikTok liable but a state court declines to find the MTA liable.  *See* Oral Argument at 11:17 (stating that ascertainment of damages in one case is likely to be conclusive of damages in the other so the cases should not be severed); *see also Sons of the Revolution in N.Y., Inc. v. Travelers Indemn. Co. of Am.*, No. 14-cv-03303 (LGS), 2014 U.S. Dist. LEXIS 171654, at *7-8 (S.D.N.Y. Dec. 11, 2014) (noting that courts have declined to sever claims against non-diverse defendants if it could lead to differing results in federal and state courts).  Thus, Plaintiffs argue that the Court should remand the case in its entirety to state court, where Defendants can still seek severance.  (DE 15 at 7.)

Defendants, however, argue that this case involves different claims which will surely involve different defenses and evidence.  (DE 21 at 20) (noting that TikTok will put on defenses concerning the design and algorithms but MTA will display evidence concerning municipalities).

Here, there are several common questions of fact and law present between both Defendants.[8]  Although there is no allegation that TikTok and the MTA Defendants acted in concert, the common factual and legal questions consist of whether Defendants were jointly and severally liable, their defenses, causation, and the extent and allocation of damages.  (DE 19 at

---

[8] Although Plaintiffs failed to raise existing common questions of law or fact in their initial motion to remand, the Court nevertheless has discretion to consider this argument that was posed in their reply.  *See Compania del Bajo Caroni (Caromin)*, 341 Fed. Appx. 724 (2d Cir. 2009).

7); Oral Argument at 11:35 (noting that both TikTok and MTA will likely introduce experts discussing suicide in teens); *see also Sons of the Revolution in N.Y., Inc.,* 2014 U.S. Dist. LEXIS 171654, at *8 (finding that because the claims against the insurance company and ConEdison arose out of the same occurrence, namely the loss of electricity from the storm, there would be a *substantial* "possibility of duplicative discovery") (emphasis added); *Massey*, 2019 U.S. Dist. LEXIS 68480, at *14 (finding proper joinder of claims because the divergent legal questions regarding products liability, breach of warranty, and medical malpractice were predicated on the same questions of fact); *Green,* 2009 U.S. Dist. LEXIS 98285, at *21-23 (finding several factual issues to all plaintiffs' claims which were material to the issue of defendants' liability as well as legal issues such as whether misrepresentations or omissions were justifiably relied upon, whether civil conspiracy existed, and whether defendants were unjustly enriched); *Abruzzo Docg Inc*., 2021 U.S. Dist. LEXIS 220196, at *23 (finding that all claims raised common questions of law and fact relating to the COVID shutdown orders); *cf. Funk*, 2013 U.S. Dist. LEXIS 177799, at *18-19 (finding that the various plaintiffs' claims concerning insurance policies for each of their respective properties did not arise out of the same transaction or occurrence because the claims would involve different factual and legal issues); *Dante v. Nat'l Flood Ins. Program*, No. 13-CV-6297 (ARR) (JO), 2013 U.S. Dist. LEXIS 166664, at *6 (E.D.N.Y. Nov. 21, 2013) (finding that although the claims arose out of a single transaction or occurrence—the storm— they would involve "entirely different factual and legal issues" namely each property's condition and location, value, and extent of damage).   In fact, Defendant Town of Islip conceded at Oral Argument that both the Town and TikTok would be arguing that they did not cause the accident, whether because of Chase Nasca's mental health or another intervening or superseding cause. Oral Argument at 11:45-46.

For these reasons, the undersigned finds that there are common questions of fact or law between the two defendants.

Plaintiffs state that *Tapscott* requires that joinder must be "egregious" to constitute fraudulent joinder. *Tapscott*, 77 F.3d at 1361. However, TikTok argues that egregiousness is not required to satisfy fraudulent misjoinder. (DE 21 at 21.)

There is no consensus among the courts as to what constitutes "egregiousness." *Kraus*, 2006 U.S. Dist. LEXIS 37284, at *16-21.[9] However, courts have found that fraudulent misjoinder does not apply if the joining of additional claims and defendants is "procedurally questionable but not clearly improper" and others require a showing less than fraud but at least a bad faith attempt to defeat diversity. *Keune v. Merck & Co*., 2013 U.S. Dist. LEXIS 117375, at *38-39 (E.D.N.Y. May 17, 2013) (adopting the latter approach not requiring a finding of fraud or examining subjective intent); *In re Fosamax Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 57473, at *43 (S.D.N.Y. July 28, 2008) (linking egregiousness to whether there is a connection to claims against the joined defendants).

If the Court were to find that fraudulent misjoinder is not applicable here, it should accordingly find that egregiousness is not met here. Plaintiffs filed the action in state court, the proper forum, against TikTok, a Chinese company, with the MTA, a New York organization. *See Kraus,* 2006 U.S. Dist. LEXIS 37284, at *18-21 (declining to adopt fraudulent misjoinder and finding no egregious misjoinder because the claim against the diverse and non-diverse defendant were properly joined under the state joinder standards and all the claims were "inextricably intertwined"). There was no fraud or bad faith here of any kind—rather, Plaintiffs

---

[9] *Nolan v. Olean Gen. Hosp.,* No. 13-CV-333, 2013 WL 3475475, at *3 (W.D.N.Y. July 10, 2013) (finding that fraudulent misjoinder requires claims to be "egregiously" misjoined); *Abruzzo*, 2021 U.S. Dist. LEXIS 220196, at *21 n.9 (finding no clear standard as to how to apply fraudulent misjoinder and deferring to the egregiousness standard).

admit that they dismissed their MDL complaint against Defendant TikTok and filed the *pro se* Notice of Claim against the MTA Defendants as is required when suing a municipality.  (DE 19 at 1.)  Plaintiffs' counsel learned of these Notice of Claims after it had already filed suit in the MDL and realizing the Statute of Limitations to preserve claims against the MTA would expire. (*Id*.)  It thus found the best solution was to dismiss the MDL claims and proceed against both the MTA and TikTok in state court and avoid several concurrent lawsuits.  (*Id*.)

Because the undersigned has already identified several connections between TikTok and MTA Defendants and has found no semblance of bad faith in bringing the state court action, the undersigned respectfully recommends finding fraudulent misjoinder to be inapplicable.

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Plaintiffs' motion for remand be GRANTED and respectfully recommends the case to be remanded back to the Suffolk County Supreme Court.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604

(2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:   Central Islip, New York
      July 27, 2023

           RESPECTFULLY RECOMMENDED,

          /S/ *James M. Wicks*

           JAMES M. WICKS
          United States Magistrate Judge